IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RUTHIE SINGLETON BARNES**                                                          **PLAINTIFF**

**V.**                                                          **CIVIL ACTION NO. 3:22-cv-699-HTW-LGI**

**KILOLO KIJAKAZI,**
**COMMISSIONER OF SOCIAL SECURITY**                                      **DEFENDANT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Ruthie Barnes appeals the final decision denying her application for disability benefits. The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully analyzed the entire record, including the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

Plaintiff filed a disability application alleging she became disabled on September 18, 2020, because of several physical and mental conditions, including lumbar degenerative disc disease, right ankle post-traumatic arthritis, degenerative joint disease of the hips, bradycardia, hypertension, hyperlipidemia, obesity, and mood disorder with depression and anxiety. She was over 60 years old at the time of filing, with a high school education and past relevant work experience as an administrative and executive assistant. Following agency denials of her applications, an ALJ issued a decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review, and she now appeals that decision.

The evidence, detailed in the memorandum briefs and the ALJ's decision, will not be repeated in depth here.  Plaintiff testified at the administrative hearing that she has not worked since she was laid off because of Covid in September 2020.  She identified physical pain as her biggest problem but testified that she is also depressed "all the time." Records reflect situational stressors, and Plaintiff testified that she had been "under a lot more stress" since her significant other suffered a massive stroke.  According to Plaintiff, she probably suffers from panic attacks two to three times per week, and if she did not take Prozac and anxiety medication, she "wouldn't know" who she was.  Though she acknowledged that medications help manage her mental health symptoms, Plaintiff testified that they cause drowsiness and would impede her ability to focus if she were to return to work.

After considering Plaintiff's testimony and subjective complaints, the ALJ concluded that the objective medical evidence did not establish Plaintiff was precluded from all work activity.  At step one of the five-step sequential evaluation,[1] the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date, September 18, 2020, through her date last insured, March 31, 2025.  At steps two and three, the ALJ found that although Plaintiff's lumbar degenerative disc disease, right ankle post-traumatic arthritis, degenerative joint disease of the hips, bradycardia,

---

[1]  Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity?  (2) Does plaintiff have a severe impairment?  (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work?  (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

hypertension, hyperlipidemia, and obesity were severe, they did not meet or medically

equal met a listing.  The ALJ found that Plaintiff's mental impairment— "tied mainly to

her physical condition and life stressors"—was not severe.  At steps four and five, the

ALJ found that Plaintiff had the residual functional capacity to perform sedentary work

except she needs a cane for the portion of a job that requires ambulation.  Based on

vocational expert testimony, the ALJ concluded that given Plaintiff's age, education,

work experience, and residual functional capacity, she could perform her past relevant

work as an administrative or executive assistant.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1)

whether there is substantial evidence in the record to support the ALJ's decision; and (2)

whether the decision satisfies relevant legal standards.  *Webster v. Kijakazi*, 19 F.4th 715,

718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018).  As the

United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout
> administrative law to describe how courts are to review agency
> factfinding. Under the substantial-evidence standard, a court looks to an
> existing administrative record and asks whether it contains sufficient
> evidence to support the agency's factual determinations. And whatever the
> meaning of substantial in other contexts, the threshold for such evidentiary
> sufficiency is not high. Substantial evidence, this Court has said, is more
> than a mere scintilla. It means—and means only—such relevant evidence as
> a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations and

internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564

(5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).  On judicial

review, this Court may not re-weigh the evidence, try the case de novo, or substitute its

judgment for that of the ALJ, even if it finds evidence that preponderates against the

ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff contends the ALJ erred because contrary to his step-two finding, her

mental impairment is severe. She acknowledges, however, that there is no reversible

"step 2 error" where, as here, the ALJ proceeds past step two and considers her

impairments as a whole. But she maintains that the ALJ's failure to include mental

limitations in his residual functional capacity determination warrants reversal or remand.

The Commissioner counters that the ALJ's decision is supported by substantial evidence

and complies with applicable standards. Given the record, the undersigned submits there

is no basis for reversal or remand.

An ALJ's residual functional capacity determination is an assessment, based on all

the relevant evidence, of a claimant's ability to do work on a sustained basis in an

ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a),

416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is not a medical

opinion, but an administrative finding of fact. Social Security Ruling 96–8p, *Titles II &*

*Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2,

1996) n. 4). The sole responsibility for assessing a claimant's residual functional

capacity rests with the ALJ, who is not required to incorporate limitations in the residual

functional capacity determination that he did not find to be supported by the record.

*Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).

As both sides acknowledge, the ALJ considered the medical and testimonial evidence relevant to Plaintiff's depression and anxiety before recognizing them as mildly limiting, but not severe, at step two of the sequential evaluation.  In doing so, the ALJ appropriately analyzed the B-criteria and found Plaintiff had mild limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt and manage herself.  20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[2]  Though Plaintiff described greater limitations at the administrative hearing, the ALJ noted that she indicated that she had no problems getting along with others; no problems with her memory, understanding, or ability to follow instructions; and, no problems attending to her personal needs as result of her mental impairments in her function report.  She also reported that she had a "pretty good" ability to maintain attention and follow written and oral instructions.

In addition to this evidence, the ALJ considered Plaintiff's treatment records in evaluating the severity of her mental impairments at step two, including a "December 2020 internal medical consultative examination report noting that claimant's mental condition ***did not affect her ability to work***."[3]  He also considered the findings of the consulting psychologist, Dr. Hays—the only examining psychologist of record to report

---

[2] At step two of the sequential evaluation, ALJs must rate the degree of functional limitation caused by mental impairments pursuant to criteria in "paragraph B" of the Listings for mental disorders in four broad categories: understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and, adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

[3] Emphasis added.

on the effect of Plaintiff's mental impairments on her ability to perform work-related

activities.  The ALJ accurately summarized the findings as follows:

> At the exam, the claimant reported that she was triggered by exacerbation of her back and situational stressors. She reported that she had initiated Xanax in 2016 after experiencing emotional distress from the sudden death of her boss and the episode remitted; however, she had begun experiencing amotivation, irregular arousal pattern, fatigue, and depressed mood subsequent to a series of psychosocial stressors such as her son's emergency surgery, her pending divorce, and chronic pain. With regard to daily activities, the examination report noted that the claimant was able to complete personal hygiene independently, drive herself to appointments, take medications independently, prepare meals, complete household chores, and complete shopping for household items online. Dr. Hays noted that the claimant was casually dressed with adequate grooming. On examination, the claimant was alert and oriented to person, place, time, and situation. She was cooperative with normal speech, an ok mood, and a euthymic affect. Her insight was fair and her judgment was adequate. Her remote recall was adequate. On immediate recall she got 3/3 words and after a five-minute delay, she got 2/3 words and 3/3 words with a prompt. Her attention and concentration were adequate, as she accurately counted backwards from twenty and accurately spelled WORLD forward and backward. She accurately demonstrated the ability to add and subtract simple mathematical equations using addition, subtraction, division, and multiplication, and she accurately answered simple questions related to making change. Her abstraction was adequate based on her responses to proverbs and similarities. Her estimated intelligence was average. Her thought content was logical and goal directed. Dr. Hays diagnosed the claimant with adjustment disorder mixed with anxiety and depressed mood.

The ALJ relied on these examination findings, along with Plaintiff's function report, and

the medical report noting that her mental condition did not affect her ability to work, to

support a non-severity finding at step two.

Plaintiff responds with evidence she finds favorable to her on appeal.  But she

does not adequately explain why the evidence on which the ALJ relied is insubstantial.

*Hammond v. Barnhart*, 124 F. App'x 847, 853 (5th Cir. 2005) (holding that, even though

there was "some evidence that point[ed] to a conclusion that differ[ed] from that adopted

by the ALJ," there was no error because there was "far more than a scintilla of evidence

in the record that could justify [the] finding that [the plaintiff's] impairments were not

severe disabilities").  Instead, she argues that it was prejudicial error for the ALJ not to

account for her mild mental limitations in his residual functional capacity determination.

Not so.

    As other courts in this district have recognized, it is not the case that "whenever an

ALJ conducts a severity analysis at step two with respect to mental impairments and finds

mild limitations, then the ALJ is required to include mental limitations in the RFC

assessment." *Sistrunk v. Comm'r of Soc. Sec.*, No. 3:21CV413-KHJ-RPM, 2022 WL

4287650, at *3 (S.D. Miss. July 14, 2022), *report and recommendation adopted sub nom.*

*Sistrunk v. Kijakazi*, No. 3:21-CV-413-KHJ-RPM, 2022 WL 3045315 (S.D. Miss. Aug.

2, 2022). See also *Kora v. Saul*, No. CV 20-327-JWD-RLB, 2021 WL 3829128, at *9

(M.D. La. Aug. 11, 2021), *report and recommendation adopted,* No. CV 20-327-JWD-

RLB, 2021 WL 3824817 (M.D. La. Aug. 26, 2021) (rejecting claimant's contention that

mild limitations in the four functional areas should necessarily result in certain mental

limitations being included in the RFC).  While an ALJ "must consider limitations and

restrictions imposed by all of an individual's impairments, even those that were not

'severe,'" the residual functional capacity assessment "is a function-by-function

assessment based upon all of the relevant evidence of an individual's ***ability to do work-

related activities.*" *Jeansonne v. Saul*, 855 F. App'x 193 (5th Cir. 2021) (emphasis

added).

In his evaluation of Plaintiff's residual functional capacity here, the ALJ explained, although in less detail than step two, that the evidence did not support any other limitations.  In making this finding, the ALJ considered the supportability and consistency of the medical opinions and prior administrative findings of record in compliance with 20 C.F.R. § 404.1520c(a) (2017), which no longer require ALJs to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  Rather, supportability and consistency of medical opinions or prior administrative findings are "the most important factors" to be considered when evaluating the persuasiveness of medical opinions.  But an ALJ remains free to assign little or no weight to the opinion of any physician when the physician's statements are brief and conclusory, are not supported by medically acceptable clinical laboratory diagnostic techniques or are otherwise unsupported by the evidence.  *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014) (citations omitted).

The ALJ found the state agency physician's opinions, at the initial and reconsideration levels, concerning Plaintiff's mental impairments persuasive.  The consultants, like the ALJ, found Plaintiff's mental impairment was non-severe, with mild limitations in all four functional areas of the PRT at step two.  The ALJ noted that these opinions, neither of which assigned work-related limitations, were "supported by and consistent with the generally unremarkable consultative mental status exam findings and the claimant's treatment records, which do not note any major mental abnormalities."

But unlike her examination findings, the ALJ did not find the consulting examining psychologist's conclusions persuasive.  Dr. Hays found that despite her mental impairment, Plaintiff could manage her finances without assistance, and have socially appropriate interactions in a work setting, but she might "experience some attentional deficits that may impede [her] ability to complete complex tasks," and would, more likely than not, "benefit from reasonable accommodations [ex. additional time to complete assignments, written instruction, etc.) to optimize performance in a work setting."  As the ALJ observed, these latter opinions were not supported by Plaintiff's function report; Dr. Hays's own "largely unremarkable examination findings"; and, VA treatment records, "which do not note any major mental status abnormalities."  Plaintiff notes on appeal that Dr. Hays found that her prognosis was "guarded" due to "ongoing psychological stressors."  But she does not meaningfully address that Dr. Hays then stated: "Adjustment Disorder with anxiety and depressed mood is highly responsive to evidence-based psychotherapy, such as problem-solving therapy, so claimant's prognosis is likely to improve if she were to actively engage in such treatment."  Plaintiff does not direct the Court to any evidence of such treatment.  A claimant's failure to seek treatment is a relevant factor in determining the severity of an alleged impairment, and "a medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."  *LeBlanc v. Chater*, 83 F.3d 419 (5th Cir. 1996) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)).  *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Anthony*, 954 F.2d at 295; *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  Accordingly, even if the

9

court were to find the ALJ erred as Plaintiff alleges, she has not established that she was prejudiced.

In sum, substantial evidence supports the ALJ's decision not to include any mental limitations in the residual functional capacity assessment. *Cf. Jeansonne*, 855 F. App'x at 197–98 ("Because substantial evidence shows that [the claimant's] mild mental limitations do not significantly affect her ability to work, we also find no error at step five—whether the impairment prevents the claimant from performing any other substantial gainful activity."); *Silvio v. Saul*, No. CV 20-381-BAJ-RLB, 2021 WL 4498991, at *6 (M.D. La. Aug. 18, 2021), *report and recommendation adopted,* No. CV 20-00381-BAJ-RLB, 2021 WL 4497485 (M.D. La. Sept. 30, 2021), *report and recommendation adopted*, No. CV 20-00381-BAJ-RLB, 2021 WL 4497485 (M.D. La. Sept. 30, 2021) ("because substantial evidence supports the finding that Plaintiff's mild mental limitations do not significantly limit his ability to work and do not prevent the claimant from performing any other substantial gainful activity, the ALJ need not include Plaintiff's non-severe impairments in the RFC").

## Conclusion

Based on consideration of the evidentiary record, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a recommendation that the ALJ applied the correct legal standards, and that substantial evidence supports the ALJ's decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, will bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED on January 30, 2024.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE